COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Malveaux and Causey
Argued at Salem, Virginia


PETER TIMOTHY GIONIS

v.      Record No. 1197-21-3

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE RANDOLPH A. BEALES
NOVEMBER 22, 2022


FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
Clark A. Ritchie, Judge

Caleb J. Routhier (Miller, Earle & Shanks, PLLC, on briefs), for
appellant.

Rosemary V. Bourne, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


Peter Timothy Gionis appeals an order of the Circuit Court of Rockingham County

convicting him of petit larceny, third or subsequent offense, under Code §§ 18.2-103 and

18.2-104. Gionis raises two assignments of error on appeal. First, he contends that the trial

court "erred by refusing to treat the crime as a misdemeanor." Second, he contends that the trial

court "erred by declining to overturn *Ruplenas v. Commonwealth*[, 221 Va. 972 (1981)]."

I. BACKGROUND

On December 21, 2020, a grand jury issued an indictment against Peter Timothy Gionis

for stealing merchandise "having a value of less than $500.00 and belonging to Sheetz" on or

about May 29, 2020. According to the indictment, Gionis "ha[d] been convicted two or more

times previously of larceny offenses or of offenses deemed or punishable as larceny."

Consequently, Gionis was charged with a Class 6 felony pursuant to Code § 18.2-104. The same

day the indictment was issued, Gionis appeared before the Circuit Court of Rockingham County

asking for a continuance until January 21, 2021. On January 21, 2021, Gionis rejected a plea agreement and decided to proceed with a jury trial. The trial court set a hearing for June 7, 2021. At the hearing on June 7, 2021, the trial court set a jury trial for July 22, 2021. However, on July 1, 2021, the trial court granted another motion to continue by Gionis and set a new trial date for August 17, 2021.

On July 16, 2021, Gionis filed a motion *in limine* asking the trial court to treat his crime as misdemeanor larceny instead of as felony larceny because, effective July 1, 2021, the General Assembly had repealed Code § 18.2-104. The trial court held "that the law in existence at the time of the alleged crime controls the case." The trial judge explained that "[t]here is no language in the repeal statute that makes the repeal retroactive. The change in this case and the law seems to apply to the substantive rights of the parties." The trial court declined to ignore *Ruplenas*, and, of course, had no authority to overrule it. It also found that the Commonwealth did not consent to using the revised statute. Consequently, the trial court denied Gionis's motion *in limine* and then scheduled the jury trial for October 21, 2021.

Gionis later entered an *Alford* guilty plea to the larceny pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970), and conditioned his plea upon his right to appeal.[1] Code § 19.2-254. The trial court convicted Gionis upon his guilty plea and sentenced him pursuant to his plea agreement. Gionis now appeals to this Court.

---

[1] Under Code § 19.2-254, the General Assembly has authorized pleas of guilty to be conditioned on "a review of the adverse determination of any specified pretrial motion" on appeal. Although this statute does not explicitly reference *Alford* guilty pleas pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970), this Court has previously held that an appellant who entered an *Alford* guilty plea "may appeal [a] decision" when the appellant's "plea agreement specified that he could appeal the circuit court's decision" on a particular issue. *Brown v. Commonwealth*, 68 Va. App. 58, 66-67 (2017). Therefore, Gionis's *Alford* guilty plea does not bar his appeal. *See e.g.*, *Carroll v. Commonwealth*, 280 Va. 641, 651-52 (2010) (holding that an *Alford* plea is treated functionally the same as a guilty plea in further criminal proceedings).

## II. ANALYSIS

On appeal, Gionis argues that the trial court erred in convicting him of larceny, third or subsequent offense—a felony—instead of simple misdemeanor larceny. He argues that he could no longer be convicted of larceny, third or subsequent offense, under Code §§ 18.2-103 and 18.2-104 because the General Assembly had repealed Code § 18.2-104 before he was convicted. Gionis makes this argument even though the statute was still in full force and effect at the time that he committed the offense and at the time criminal proceedings against him began. Consequently, resolution of this case turns on whether the repeal of Code § 18.2-104 affected the Commonwealth's prosecution of Gionis by retroactively causing that he could no longer be convicted of a felony—only a misdemeanor. In deciding this case, we rely on Code § 1-239 and we review general principles regarding the retroactive application of statutes as stated by the Supreme Court of Virginia. *See e.g.*, *Appalachian Power Co. v. State Corp. Comm'n*, ___ Va. ___, ___ (Aug. 18, 2022); *Bell ex rel. Bell v. Casper ex rel. Church*, 282 Va. 203, 213 (2011); *Berner v. Mills*, 265 Va. 408, 413 (2003); *Adams v. Alliant Techsystems, Inc.*, 261 Va. 594, 599 (2001); *Ruplenas*, 221 Va. at 977-78; *Shilling v. Commonwealth*, 4 Va. App. 500, 507 (1987) ("Every reasonable doubt is resolved against a retroactive operation of a statute, and words of a statute ought not to have a retrospective operation unless they are so clear, strong and imperative that no other meaning can be annexed to them.").

### A. Standard of Review

The question of whether the General Assembly's repeal of Code § 18.2-104 has retroactive effect on this case presents a question of law which this Court reviews *de novo*. *Green v. Commonwealth*, 75 Va. App. 69, 76 (2022). We conduct our analysis taking into account well-established principles of statutory construction. "The Virginia Supreme Court has long held that 'when analyzing a statute, we must assume that "the legislature chose, with care,

the words it used . . . and we are bound by those words as we [examine] the statute.""'"

*Doulgerakis v. Commonwealth*, 61 Va. App. 417, 420-21 (2013) (first alteration in original)

(quoting *City of Va. Beach v. ESG Enters.*, 243 Va. 149, 153 (1992)).  Consequently, we "apply[]

the plain meaning of the words unless they are ambiguous or [doing so] would lead to an absurd

result."  *Wright v. Commonwealth*, 278 Va. 754, 759 (2009).  In considering the meaning of

particular language in context, "[w]ords in a statute should be interpreted, if possible, to avoid

rendering [other] words superfluous."  *Cook v. Commonwealth*, 268 Va. 111, 114 (2004); *see*

*Epps v. Commonwealth*, 47 Va. App. 687, 714 (2006) (*en banc*) (requiring a court to "giv[e] to

every word and every part of the statute, if possible, its due effect and meaning" (quoting *Posey*

*v. Commonwealth*, 123 Va. 551, 553 (1918))), *aff'd*, 273 Va. 410 (2007).

## B.  Code § 1-239 Applies to the Repeal of a Statute

The statute under which Gionis was convicted, and the subject of his first assignment of

error, is Code § 18.2-104 (repealed 2021).  Prior to July 1, 2021, this statute provided that a third

(or subsequent) conviction for petit larceny was punishable as a Class 6 felony.  Former Code

§ 18.2-104 (2014 Replacement Volume).  In February 2021, the General Assembly passed and

enrolled House Bill 2290 ("HB 2290").  After approval by the Governor that bill was published

as Chapter 192 in the "2021 Virginia Acts of the General Assembly, Special Session I."  The

entirety of its substantive text reads, "Be it enacted by the General Assembly of Virginia:

1.  That § 18.2-104 of the Code of Virginia is repealed."  2021 Va. Acts, Spec. Sess. I ch. 192.

The repeal of Code § 18.2-104 became effective July 1, 2021.  *See* Code § 1-214(B); Article IV,

- 4 -

Section 13, of the Virginia Constitution.[2]  By repealing this statute, the General Assembly

removed the enhanced penalties for subsequent larceny convictions provided for in that statute.

Code § 18.2-104 was the law in effect both at the time that Gionis committed larceny and

at the time he was indicted.  However, it was repealed before Gionis was actually convicted.

Consequently, we are left to determine whether the repeal of Code § 18.2-104 had an immediate

or "retroactive" effect on Gionis's pending case such that he could no longer be convicted under

Code § 18.2-104.  *See Somers v. Commonwealth*, 97 Va. 759, 761 (1899); *Street v.

Commonwealth*, 75 Va. App. 298, 310-11 (2022); *see also McCarthy v. Commonwealth*, 73

Va. App. 630, 647-49 (2021).  In doing so, we apply Code § 1-239 and review general principles

of retroactivity.

Code § 1-239 generally prevents any court from interpreting a repeal as having a

retroactive effect.  However, Code § 1-239 only applies to new acts of the General Assembly.

During oral argument before this Court, the question arose whether the repeal of Code

§ 18.2-104 was such a "new act" because it simply removed from, rather than added to, the

Code.  Code § 1-239 provides:

> *No new act* of the General Assembly shall be construed to repeal a
> former law, as to any offense committed against the former law, or
> as to any act done, any penalty, forfeiture, or punishment incurred,
> or any right accrued, or claim arising under the former law, or in
> any way whatever to affect any such offense or act so committed
> or done, or any penalty, forfeiture, or punishment so incurred, or
> any right accrued, or claim arising before the new act of the
> General Assembly takes effect; except that the proceedings
> thereafter held shall conform, so far as practicable, to the laws in
> force at the time of such proceedings; and if any penalty,

---

[2] "All laws enacted at a special session of the General Assembly . . . shall take effect on the first day of the fourth month following the month of adjournment of the special session at which they were enacted, unless a subsequent date is specified."  Code § 1-214(B).  The 2021 Special Session I in which HB 2290 was passed adjourned *sine die* on March 1, 2021. http://dls.virginia.gov/pubs/calendar/cal2021_specialsession.pdf (last visited Nov. 21, 2022); 2021 Va. Acts, Spec. Sess. I, Volume I, Title Page.  Therefore, given the plain language of Code § 1-214, Code § 18.2-104 took effect on July 1, 2021.

forfeiture, or punishment be mitigated by any provision of the new act of the General Assembly, such provision may, with the consent of the party affected, be applied to any judgment pronounced after the new act of the General Assembly takes effect.

(Emphasis added).

HB 2290 certainly bears the marks of a "new act of the General Assembly," as described in Code § 1-239. Like all bills passed by the General Assembly and approved by the Governor, HB 2290 was published in the Acts of Assembly, and the General Assembly identified HB 2290 as an "act of the General Assembly" when it included the following language in the preamble of HB 2290 before enrolling it for approval by the Governor: "*An Act to repeal § 18.2-104 . . . .*" (Emphasis added).[3]

Other provisions of the Code of Virginia also show that the General Assembly has defined "acts" to include legislative actions broader than merely those bills which are codified. *See* Code § 1-214 (delineating between "laws" and varieties of "acts"). In addition, the Supreme Court of Virginia has also acknowledged that even quasi-legislative actions performed by a legislative body can be considered acts. *See also Blankenship v. City of Richmond*, 188 Va. 97, 103-04, 106 (1948) (referring to both legislative actions and quasi-judicial actions as "act[s]"). For these reasons, we conclude that a "new act of the General Assembly" under Code § 1-239 does include a legislative action that simply repeals a statute in full.[4] Given that HB 2290, which

---

[3] Such language was not a portion of the enacting clause and is therefore merely persuasive. *See Renkey v. Cnty. Bd. of Arlington Cnty.*, 272 Va. 369, 373 (2006) ("This Court has stated '[t]he preamble to a statute is no part of it and cannot enlarge or confer powers or control the words of the act unless they are doubtful or ambiguous.'" (quoting *Commonwealth v. Ferries Co.*, 120 Va. 827, 831 (1917))).

[4] In addition, this Court has previously held that Code § 1-239 applies to an act of the General Assembly that repeals a statute. *Commonwealth v. Murphy*, No. 0596-21-3, slip op. at 12 (Va. Ct. App. Oct. 26, 2021) ("[D]espite the recent repeal of Code § 46.2-357, the Commonwealth may proceed with its prosecution under Code § 46.2-357 due to the language of Code § 1-239." "[T]he expansive language of Code § 1-239 mandat[es] that repeal does not 'in

- 6 -

repealed Code § 18.2-104, is such a "new act," Code § 1-239 therefore makes clear that the repeal of Code § 18.2-104 is a new act that—absent explicit language in the act stating otherwise—must be applied prospectively, not retroactively.

C.  Applying Code § 1-239 to this Case and Reviewing General Principles of Retroactivity

Code § 1-239 generally prohibits this Court from construing new acts of the General Assembly to apply to cases where proceedings have already begun.  *Green*, 75 Va. App. at 85-86 ("When statutory amendments become effective that would affect a pending matter and the amended statute does not provide that it applies retroactively, courts should apply the law that was in effect before the statutory amendments took effect unless the plain language of the amended statute shows a contrary intent." (citing *Washington v. Commonwealth*, 216 Va. 185, 193 (1975))); s*ee also Ferguson v. Ferguson*, 169 Va. 77, 85 (1937).  The word "proceedings" is "broad enough to cover any act, measure, step or all steps in a course taken in conducting litigation, civil or criminal." *Abdo v. Commonwealth*, 218 Va. 473, 478 (1977) (citing *Sigmon v. Commonwealth*, 200 Va. 258 (1958)).  In addition, when the question is when the triggering event occurred, there is no need to determine whether the triggering event would be from the moment the offense was committed or from when proceedings prosecuting the offense began when the result in answer to that question would be the same.  *Green*, 75 Va. App. at 84 n.4 ("Regardless of whether the triggering event is the probation violation itself or the instituting of revocation proceedings in circuit court, the result in this particular case would be the same under either scenario.").

---

any way whatever affect any . . . offense' committed against the former law.").  However, given that the decision in *Murphy* was an unpublished memorandum opinion, it constitutes only nonbinding, persuasive authority.  *See* Rule 5A:1(f) (stating that unpublished opinions can be "informative, but shall not be received as binding authority"); *Christian v. Commonwealth*, 59 Va. App. 603, 609 (2012).

Here, this litigation involving the criminal prosecution of Gionis was well along by the time the repeal of Code § 18.2-104 took effect on July 1, 2021. Gionis committed the subject offense on May 29, 2020. A grand jury issued an indictment against Gionis on December 21, 2020, and that same day Gionis asked for a continuance until January 21, 2021, for the "purpose(s) of Disposition." Proceedings continued, and on June 7, 2021, the trial court set a jury trial for July 22, 2021. Gionis again made a motion to continue, which the trial court granted. Gionis ultimately pleaded guilty on October 21, 2021. The fact that the trial itself had not yet occurred by July 1, 2021, does nothing to negate the circumstance that criminal proceedings were already well underway against Gionis on the date the repeal of Code § 18.2-104 became effective.

Given that both the criminal offense and the proceedings here against Gionis commenced before the repeal of Code § 18.2-104 went into effect, the plain language of Code § 1-239 prevents this Court from considering the repeal of Code § 18.2-104 as being effective in this prosecution against Gionis.

D. The Nature of Procedural and Substantive Rights and Code § 1-239's Exceptions

Both this Court and the Supreme Court recognize "the fundamental principles of statutory construction that retroactive laws are not favored, and that a statute is always construed to operate prospectively unless a contrary legislative intent is manifest." *Berner*, 265 Va. at 413 (citing *Adams*, 261 Va. at 599); *McIntosh v. Commonwealth*, 213 Va. 330, 331-32 (1972); *Duffy v. Hartsock*, 187 Va. 406, 419 (1948); *see Washington*, 216 Va. at 193 ("The general rule is that statutes are prospective in the absence of an express provision by the legislature." (citing *Burton v. Seifert Plastic Relief Co.*, 108 Va. 338, 350-51 (1908))); *McCarthy*, 73 Va. App. at 647. In addition, "when a statute is amended while an action is pending, the rights of the parties are to be decided in accordance with the law in effect when the action was begun, unless the amended

statute shows a clear intention to vary such rights." *Appalachian Power Co.*, ___ Va. at ___ (quoting *Washington*, 216 Va. at 193).

There are two ways to overcome the strong presumption against retroactive application. *Montgomery v. Commonwealth*, 75 Va. App. 182, 190 (2022). "First, a statute may apply retroactively when the General Assembly uses explicit terms detailing the retroactive effect of the legislation. Second, where a law affects procedure only, instead of vested or substantive rights, the statute may 'be given retroactive effect.'" *Id.* (quoting *Sargent Elec. Co. v. Woodall*, 228 Va. 419, 424 (1984) (internal citation omitted)); *McCarthy*, 73 Va. App. at 647. We address each of these in turn.

First, the General Assembly provided no language indicating it intended to give the repeal of Code § 18.2-104 retroactive effect. The legislature could certainly have included language in HB 2290 that manifested a clear intent that the repeal would be effective immediately and retroactively—or it could have provided that the repeal take effect at a time other than the statutorily prescribed effective date for newly enacted legislation. However, the General Assembly did not do so. *City of Charlottesville v. Payne*, 299 Va. 515, 531 (2021) ("[T]he General Assembly knows how to make its intent manifest that a statute has retroactive application."). Any such language is nowhere to be found in the legislation repealing the statute. *See Shilling*, 4 Va. App. at 508 (construing a statute regarding conspiracy, this Court stated, "We find no words in Code § 18.2-23.1 which we could construe as legislative intent to override the presumption that new laws are to be prospective in their operation."). Therefore, no language or action of the General Assembly, in this case, overcomes the presumption that the repeal of Code

§ 18.2-104 has prospective effect only.[5] Holding otherwise "would require this Court to add language to the statute the General Assembly has not seen fit to include, an exercise in which the Court is not free to engage." *Green*, 75 Va. App. at 82 (quoting *Holsapple v. Commonwealth*, 266 Va. 593, 599 (2003); *see also Doulgerakis*, 61 Va. App. at 419 (noting that "we determine the legislative intent from the words used in the statute").

Second, laws may have what we have called "retroactive" application if they are procedural, that is if they "prescribe[ ] methods of obtaining redress or enforcement of rights." *Shiflet v. Eller*, 228 Va. 115, 120 (1984); *Montgomery*, 75 Va. App. at 190, 198. In other words, when a change in the law affects only procedural rights "the law in effect when the cause of action arose does not govern the procedural aspects of a case." *Montgomery*, 75 Va. App. at 191 n.7. Instead, the procedural aspects of the case are governed by "the law in effect when the procedure itself takes place." *Id.* Conversely, a law that affects substantive rights has no such retroactive effect, and "[a] law affects substantive rights if it 'deals with [the] creation of duties, rights, and obligations.'" *McCarthy*, 73 Va. App. at 650 (quoting *Shiflet*, 228 Va. at 120). Stated differently, "a law is 'substantive . . . if it alters the range of conduct or the class of persons' that is punishable under law." *Id.* (quoting *Schriro v. Summerlin*, 542 U.S. 348, 353 (2004)).

---

[5] Gionis contends that the total repeal of a statute, as occurred here, is itself evidence the General Assembly intended the change to apply retroactively. This was the traditional rule in Virginia before 1849. As expounded by the Virginia Supreme Court in 1817 in *Scutt v. Commonwealth*, 4 Va. 54, 56 (Va. Gen. Ct. 1817), the total repeal of a law would render it no longer in force and thus "no proceedings could now be had for any offence committed before its repeal, because the Act did not authorise them." Although the Virginia Supreme Court has not expressly overturned *Scutt*, in its 1981 *Ruplenas* decision it considered this common law rule abrogated by the passage of Code § 1-239's predecessor (Code 1849, Title 9, ch. 16, § 18). *Ruplenas*, 221 Va. at 975-76. Indeed, Code § 1-239's expansive language mandates that repeal does not "in any way whatever affect any . . . offense" committed against the former law, and, therefore, "Repeal simply has no bearing on our determination of legislative intent in this case." *Murphy*, slip op. at 12.

In *McCarthy*, this Court determined that a statutory amendment was substantive when it removed a criminal punishment for certain conduct. *Id.* Applying the foregoing principles, the change now before us is substantive because it reduces the criminal punishment for certain conduct. In other words, the repeal affects substantive rights because it eliminated a group or class of felony for those who had committed a third or subsequent larceny offense. *Id.* Given that the repeal of Code § 18.2-104 affects a substantive right, the repeal of Code § 18.2-104 cannot be given retroactive effect by either our general principles of statutory construction noted *supra* or by the exception to Code § 1-239 regarding a solely procedural right. *Id.* at 648 n.9; *see Morency v. Commonwealth*, 274 Va. 569, 576-77 (2007); *Smith v. Commonwealth*, 219 Va. 455, 476 (1978).

Even if an act affects substantive rights, a defendant can still obtain a retroactive application of a new act under Code § 1-239's consent exception. Code § 1-239 provides, "and if any penalty, forfeiture, or punishment be mitigated by any provision of the new act of the General Assembly, such provision may, with the consent of the party affected, be applied to any judgment pronounced after the new act of the General Assembly takes effect." The Supreme Court has interpreted this provision to require consent by both parties to proceed under the new law before the new penalty can be imposed. *Ruplenas*, 221 Va. at 978 ("[T]he penalty in existence at the time of the offense should be applied unless the Commonwealth first elects to proceed under the new statute and obtains the consent of the defendant to do so."); *see also Green*, 75 Va. App. at 83-84. Here, the Commonwealth never consented, and it never attempted to proceed under the new act. In fact, in opposition to Gionis's motion *in limine*, the Commonwealth not only did not consent but also actually argued below against the retroactive application of the repeal of Code § 18.2-104, and the absence of an agreement between the parties to proceed under the repeal foreclosed the possibility of reducing the classification of

- 11 -

Gionis's offense from a felony to a misdemeanor. *Ruplenas*, 221 Va. at 977 ("Without the concurrence of both parties the previous penalty must apply." (citing Code § 1-239)); *Green*, 75 Va. App. at 86. Therefore, Gionis cannot rely on Code § 1-239's consent exception to mitigate his penalty or punishment in this case.[6] *Ruplenas*, 221 Va. at 977-78 (citing *Abdo*, 218 Va. at 478).

For all of these reasons, we hold that the trial court did not err in applying the law in existence at the time Gionis committed the offense and when the criminal proceedings against him began.[7] *See id*.

### E. The Trial Court Did Not Err by Declining to Overturn *Ruplenas*

Finally, Gionis ascribes error to the trial court for "declining to overturn *Ruplenas v. Commonwealth*." As a decision of the Supreme Court of Virginia, *Ruplenas* was binding on the trial court and controlled the resolution of the issue. Likewise, "[we] are bound by the decisions

---

[6] Furthermore, a contrary holding in this case would run headlong into the serious practical concerns expressed by the Supreme Court in *Ruplenas* that "[a] contrary rule might encourage dilatory tactics and procrastination which would hamper the judicial process" and that "two or more offenses occurring at the same time could conceivably receive different penalties depending upon fortuitous circumstances as to when the cases come to trial." *Ruplenas*, 221 Va. at 978; *Green*, 75 Va. App. at 84-85. "The requirement that *both* parties consent to proceed under the new law is necessary to preclude the kind of gamesmanship that would be incentivized by allowing a brief continuance to effectively change the entire outcome." *Green*, 75 Va. App. at 84-85.

[7] This case does not require the Court to distinguish between the penalty in existence at the time Gionis committed the offense and the penalty in existence when the proceedings in the criminal prosecution against him began. The law was actually the same at the time of both events in this case now before us. Regardless of whether the triggering event is the offense itself or the instituting of the criminal prosecution, the result in this particular case would be the same under either scenario. Judicial restraint dictates that we do not need to reach the question of which is the actual triggering event date because each of these dates occurs before July 1, 2021. Therefore, we refrain from weighing in on that particular question, given that the answer would have been the same in either scenario and would have no effect on our analysis. As the Supreme Court has often stated, "[T]he doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available.'" *Butcher v. Commonwealth*, 298 Va. 392, 396 (2020) (quoting *Commonwealth v. White*, 293 Va. 411, 419 (2017)).

of the Supreme Court of Virginia and are without authority to overrule [it]." *O'Malley v. Commonwealth*, 66 Va. App. 296, 301 (2016) (quoting *Roane v. Roane*, 12 Va. App. 989, 993 (1991)); *Vay v. Commonwealth*, 67 Va. App. 236, 258 n.6 (2017). Indeed, in his amended opening brief, Gionis concedes that the "Court of Appeals does not have the authority to overturn *Ruplenas*." Consequently, and almost needless to say, the trial court did not err in applying *Ruplenas* when deciding this case.

Therefore, for all of the reasons noted *supra*, we hold that the trial court did not err in convicting Gionis of petit larceny, third or subsequent offense—in accordance with the law that was in effect when Gionis committed the offense and also the law that was in effect when the criminal proceedings against Gionis began.

## III. CONCLUSION

The repeal of Code § 18.2-104 involves a substantive right to be free from a harsher penalty for subsequent larceny convictions. The legislation repealing Code § 18.2-104 did not include any language expressing a legislative intent to make the repeal effective retroactively— rather than simply prospectively, which is the presumption. The General Assembly did not even put an emergency clause in the legislation to attempt to move up its effective date.

Because there was no such substantive right at the time of the offense or when criminal proceedings began against Gionis, we hold that the trial court did not err in denying Gionis's motion to consider his offense a misdemeanor. In addition, the trial court, of course, certainly did not err in declining to overrule *Ruplenas*, which is binding Supreme Court precedent. For all of these reasons, we affirm the decision of the trial court.

*Affirmed.*